# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### MEDFORD DIVISION

PHILLIP CARL HEISS,

       Plaintiff,

              Civ. No. 1:14-cv-01595-PA

    v.

              **ORDER**

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

_____

PANNER, District Judge.

      Plaintiff Phillip Carl Heiss seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his request for waiver of overpayment of disability insurance benefits pursuant to 42 U.S.C. § 405(g). Plaintiff seeks a waiver of repayment and return of the funds already recouped by the withholding of his benefits. For the reasons below, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

## BACKGROUND

      Plaintiff began receiving Title II disability benefits in June 2006, effective retroactively to January 1, 1998. Tr. 13. Plaintiff's benefits were awarded pursuant to the decision of an Administrative Law Judge ("ALJ"), subsequent to a remand order by the United States District Court. *Id.* Plaintiff was represented by attorney Tim Wilborn in his case before the District Court and by a different attorney in his case before the ALJ. *Id.*

The Social Security Administration ("SSA") withheld 25% of Plaintiff's retroactive benefits in order to pay his attorney's fees. *Id.* In August 2006, the SSA issued a notice to Plaintiff informing him that he would "soon receive a check for $29,414.50 because we are sending you the money which we did not have to use to pay an attorney fee." Tr. 26. The SSA apparently issued this notice because they paid the attorney's fees for the attorney who represented Plaintiff before the ALJ, but erroneously failed to pay the fees owed to Mr. Wilborn. Tr. 13.

On October 9, 2008, Mr. Wilborn sent an inquiry to the SSA seeking information about the attorney's fee withholding. Tr. 28. On January 8, 2010, Mr. Wilborn was awarded attorney's fees in the amount of $24,688.78 pursuant to 42 U.S.C. § 406(b) for his representation of Plaintiff. Tr. 30. On February 26, 2010, the SAA admitted that it had mistakenly paid the sum withheld for Mr. Wilborn's fee to Plaintiff and that the SSA "should have continued to withhold" the money. Tr. 32. Mr. Wilborn was advised to attempt to collect the fee directly from Plaintiff. *Id.* The SSA informed Mr. Wilborn that if he was unable to reach a satisfactory agreement with Plaintiff, the SSA would withhold Plaintiff's benefits in order to pay Mr. Wilborn's fee. *Id.* Plaintiff and Mr. Wilborn were not able to come to an agreement and in July 2010 the SSA informed Plaintiff that they would be withholding his benefits in order to recover the overpayment. Tr. 13-14.

Plaintiff requested that the SSA not collect the overpayment. Tr. 36, 38-40, 109, 141-48. The SSA denied Plaintiff's request. Tr. 51. In May 2011, Plaintiff requested a hearing before an ALJ. Tr. 57-58. In July 2011, the SSA began withholding Plaintiff's benefits in order to recoup the overpayment. Tr. 59. On January 17, 2013, a hearing was held before ALJ Marilyn S. Mauer. Tr. 14. The ALJ issued a decision denying Plaintiff's request for a waiver of

overpayment on February 4, 2013.  Tr. 18.  The Appeals Council denied review on August 28,

2014, making the ALJ's decision the final Agency action.  Tr. 3.

## LEGAL STANDARD

When a claimant receives more disability benefits than he is entitled to, an overpayment

has been made and the SSA is entitled to recover the overpayment.    20 C.F.R. § 404.501.

Recovery of the overpayment may be partially or completely waived in certain circumstances.

Under the regulations, repayment may be waived if the claimant was without fault and if

recovery would defeat the purposes of the Act or be contrary to equity and good conscience.  20

C.F.R. § 404.506.  The ALJ's decision should be affirmed if it was supported by substantial

evidence and if the ALJ applied the proper legal standard.  *Anderson v. Sullivan*, 914 F.2d 1121,

1122 (9th Cir. 1990).

## THE ALJ'S FINDINGS

The ALJ found that Plaintiff was overpaid benefits in the amount of $24,687.28.  Tr. 15.

Plaintiff was determined to be without fault in causing or accepting the overpayment.  *Id.*  The

ALJ determined that withholding the overpaid sum would not defeat the purpose of Title II of the

Act in light of Plaintiff's large monthly annuity, substantial real estate holdings, and the sum of

money in Plaintiff's IRA account.  Tr. 16-17.  In making that determination, the ALJ calculated

Plaintiff's "ordinary and necessary expenses" and determined that Plaintiff "is able to spare his

entire Social Security benefit check without significant impact on his standard of living."  Tr. 17.

Finally, the ALJ found that recovery of the overpayment would not be against equity and good

conscience.  Tr. 17-18.

Accordingly, the ALJ determined that Plaintiff was not entitled to a waiver of

overpayment.  Tr. 18.

## DISCUSSION

Plaintiff challenges only the ALJ's determination that that recovery of the overpayment would not be against equity and good conscience. Recovery of an overpayment is against equity and good conscience if an individual "changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that a payment would be made or because of the overpayment itself." 20 C.F.R. § 404.509(a)(1). "The individual's financial circumstances are not material to a finding of against equity and good conscience." 20 C.F.R. § 404.509(b). However, in assessing equity and good conscience, the ALJ "must take into account all of the facts and circumstances of the case," and her decision must "be based on a broad concept of fairness." SSAR 92-5(9) (June 22, 1992), *available at* 1992 WL 248902, at *3.

> Factors such as, but not limited to, the nature of the claimant's impairment, the amount and steadiness of the claimant's income, and the claimant's assets and material resources should all be considered in the decision as to whether recovery of an overpayment should be waived on the basis that recovery would be "against equity and good conscience."

*Id.*

Plaintiff first argues that he changed his position for the worse in reliance on the overpayment. As noted, Plaintiff received the overpayment in 2006. Tr. 13. Between 2004 and 2007, Plaintiff took out loans in order to acquire six investment properties. Pl.'s Br. 2. Plaintiff claims that he would not have purchased these properties but for the overpayment and that the SSA's decision to recover the overpayment caused him to default on the loans. Plaintiff argues that this demonstrates that he changed his position for the worse in reliance on the overpayment sum. This argument is unpersuasive.

The Commissioner cites a recent district court decision from the District of Nebraska, which held that:

> A claimant "changes position" when he takes new action or incurs a new expense or obligation. Although the individual must actually incur the expense or obligation, the change need not be dramatic. And the new act or obligation must be for the worse. Finally, the new act or obligation must be linked to the award of benefits. Thus, it is not enough to have simply spent the amount received. Rather, the individual must show that he spent the money in a way in which he would not have but for the receipt of overpayments.

*Wiles v. Colvin*, 13 F. Supp.3d 1007, 1014 (D. Neb. 2014)(internal quotation marks and citations omitted).

As noted by the ALJ, Plaintiff purchased at least three of the properties at issue before he received Title II benefits. Tr. 17, 218, 219, 221. These investments cannot, therefore, be attributed to the award of benefits. The fact that Plaintiff was already in the process of acquiring investment properties at the time of the award also indicates that these investments were not the "but for" consequence of a $24,687.28 overpayment by the SSA.

Nor does it appear that Plaintiff's default on those loans was the consequence of the SSA's recovery of the overpayment. Plaintiff asserted before the ALJ that his monthly obligation on the loans for his investment property amounted to $2,152. Tr. 17, 146. Plaintiff's benefits at the time of their suspension amounted to only $1,757.50 per month, which is less than the monthly obligation. Tr. 17. During the period in which the benefits were suspended, Plaintiff's monthly income included $8022 from a disability insurance annuity weighed against ordinary and necessary expenses, which the ALJ calculated at $5373.[1] Tr. 16-17. Plaintiff also receives income from rental properties and has an IRA account with a balance of over $151,000.

---

[1] Plaintiff appears to dispute the ALJ's decision to discount the loan payments on Plaintiff's rental and investment properties in his assessment of Plaintiff's "ordinary and necessary expenses." 20 C.F.R. § 404.508 provides a list of expenses which may be considered "ordinary and necessary." While "mortgage payments" are included, they appear as an example of "fixed living expenses," along with food, clothing, utilities and insurance. 20 C.F.R. § 404.508(a)(1). It is clear from the regulation that the "mortgage payments" contemplated were for the provision of housing to the claimant, not investment properties. I find that the ALJ properly excluded those obligations from Plaintiff's "ordinary and necessary expenses."

Tr. 144-45.  Based on Plaintiff's resources, the ALJ determined that Plaintiff "had possession of sufficient liquid resources to repay the overpayment throughout the adjudicative period." Tr. 17.

The ALJ also noted that, by Plaintiff's own admission, his financial difficulties are due to "the 'current upside down real estate market' that prevented him from selling the properties at a profit." Tr. 17; *see also* Tr. 147 (in explaining why he cannot sell his investment properties, Plaintiff responded that "There is little if any equity.  [I] owe way more than [the] value of [the] lots, [which] resulted in defaults."). Plaintiff essentially reiterates this point in his opening brief. Pl.'s Br. 3.  As the ALJ correctly concluded, the fact that Plaintiff made an unfortunate investment decision does not make recovery of the overpayment against equity and good conscience.

Plaintiff also argues that the ALJ erred by considering his financial resources in assessing whether recovery would be against equity and good conscience.  Plaintiff's argument is unpersuasive.  As previously noted, Acquiescence Ruling 92-5(9) requires that the ALJ apply a "broad concept of fairness," including consideration of the amount and steadiness of Plaintiff's income and his material assets and resources.  SSAR 92-5(9) (June 22, 1992), *available at* 1992 WL 248902, at *3; *see also Quinlivan v. Sullivan*, 916 F.2d 524, 527 (9th Cir. 1990) ("Congress intended a broad concept of fairness to apply to waiver requests, one that reflects the ordinary meaning of the statutory language and takes into account the facts and circumstances of each case."); *Newton v. Chater*, 103 F.3d 139 (9th Cir. 1996) (table), *available at* 1996 WL 672318, at *3 ("[W]e have expanded the concept of equity and good conscience beyond the confines of [20 C.F.R. § 404.509(a)] because we concluded that Congress intended to apply 'a broad concept of fairness' to waiver requests."). In light of SSAR 92-5(9), the ALJ's consideration of Plaintiff's income and resources was proper and conformed to the "broad concept of fairness."

I conclude that the ALJ applied the correct legal standards in her review of this case and that her decision was supported by substantial evidence. Accordingly, I AFFIRM the decision of the Commissioner.

### CONCLUSION

The decision of the Commissioner is AFFIRMED and this action is DISMISSED.

DATED this ___*16*___ day of December, 2015.

OWEN M. PANNER
United States District Judge